# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 21-0012V
UNPUBLISHED

| | |
|---|---|
| DARCY CYR,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: February 6, 2024 |

*Renee Ja Gentry*, The Law Office of Renee J. Gentry, Washington, DC, for Petitioner.

*Mary Novakovic*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING DAMAGES[1]

On January 4, 2021, Darcy Cyr filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine she received on October 30, 2018. Petition at 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters. Although entitlement was conceded, the parties could not agree on all damages components, so the matter was designated for SPU "Motions Day," and argument was heard on January 29, 2024.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons set forth below, and as represented during the hearing,[3] I find that Petitioner is entitled to compensation in the amount **$77,889.26**, **representing $75,000.00 for actual pain and suffering, plus $2,889.26 for past unreimbursed expenses.**

## I.   Relevant Procedural History

A little more than a year after the case was filed, Respondent filed his Rule 4(c) Report in April 2022 conceding that Petitioner was entitled to compensation. Respondent's Report at 1. ECF No. 26. In view of Respondent's position, a Ruling on Entitlement was entered in Petitioner's favor. ECF No. 27. Thereafter, the parties attempted to informally resolve the issue of damages but reached an impasse on an appropriate award. ECF No. 35. I indicated to the parties that I would resolve their dispute as to damages via a hearing, which was held on January 29, 2024.[4]

The parties argued for damages based on briefing completed prior to the motions hearing. Thus, on January 9, 2023, Petitioner filed a damages brief requesting that I award (a) $90,000.00 for actual pain and suffering, (b) $500.00/year for future pain and suffering, (c) $2,889.26 for unreimbursable expense; and (d) $2,327.13 in lost wages. Petitioner's Damages Brief ("Brief") at 2, ECF No. 37.

On March 9, 2023, Respondent filed a damages brief proposing an award of $70,000.00 for Petitioner's actual pain and suffering, $2,889.26 for her unreimbursable expenses (thus accepting Petitioner's calculation of that component), and no award for future pain and suffering or lost wages. Respondent's Damages Brief ("Opp.") at 1, 7-9. ECF No. 38. Petitioner filed her reply on March 26, 2023. ECF No. 40.

## II.   Pain and Suffering

### A. Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include an award "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment awarding such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined

---

[3] *See* Minute Entry dated January 29, 2024. The transcript of this hearing, which was not yet filed as of the date of this Decision, is hereby incorporated into this Damages Decision by reference.

[4] *See* Hearing Order, filed December 18, 2023 (Non-PDF).

to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no precise formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation."). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in each case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, a special master may rely on his or her own experience adjudicating similar claims. *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated that special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

### B. Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole, including the medical records and affidavit, written briefs, and argument at the January 29th Motions Day hearing. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and rely upon my experience adjudicating these cases. Based

upon the above, I note and find the following:

- Petitioner received the flu vaccine in her left deltoid on October 30, 2018 at the Veterans' Administration, where she was employed as an orthotist and prosthetist. Ex. 1 at 21; Ex. 2 at 9; Ex. 5 at 9.

- An employee health record indicates that on November 1, 2018 (2 days post-vaccination), Petitioner sought treatment from nurse practitioner Susan Burkart-Jayez. Ex. 1 at 18-19. Petitioner reported that "at the time of vaccination, [the] vaccine was administered forcefully & hurt immediately." *Id.* at 18. Petitioner was assessed with "[i]njection trauma to L[eft] deltoid" and was instructed to apply heat to the affected area and to take a non-steroidal anti-inflammatory drug ("NSAID") of her choosing. *Id.* at 19.

- A November 5, 2018 employee health record indicates that Petitioner "[c]ontinue[d] to have significant pain in [her] left shoulder such that she ke[pt] her elbow tucked in. Some relief [from] heat to injection site." Ex. 1 at 16. It was determined that Petitioner was "able to work full duty." *Id.*

- Petitioner underwent an MRI on November 6, 2018. Ex. 1 at 3-5. It was unremarkable. *Id.*

- In response to Petitioner's November 9, 2018 request for an orthopedic consultation and subsequent "e-consult," a four-week course of occupational therapy was recommended. Ex. 1 at 16.

- A November 14, 2018 employee health record indicates that Petitioner continued to experience significant pain despite a normal physical exam. Ex. 1 at 16.

- On November 16, 2018, Petitioner saw a chiropractor for her a general adjustment and arm pain. Ex. 6 at 4, 15. The record documenting this visit indicates that Petitioner rated her symptoms as a seven on a ten-point pain scale. *Id.*

- Petitioner returned for chiropractic treatment on November 20, 2018. Ex. 6 at 16. The note documenting this visit indicates that she again rated her pain as a seven on a ten-point pain scale. *Id.*

- On November 26, 2018, Petitioner was seen by Dr. Lee A. Kaback at OrthoNY in relation to her worker's compensation claim regarding her left shoulder pain. Ex. 2 at 3-5. In addition to noting that Petitioner's pain had been present since her October 30, 2018 vaccination, Dr. Kaback's medical notes reflect that her pain was

4

"laterally based, exacerbated with overhead and behind-the-back activities." *Id*. Petitioner was assessed with left shoulder rotator cuff tendinitis. *Id*. at 4.

- On January 2, 2019, Petitioner returned to Dr. Kaback and reported continuing left shoulder pain. Ex. 2 at 6-8. The medical notes documenting this visit indicate that Petitioner "[was] not doing well." *Id*. Formal therapy as well as the use of anti-inflammatory medications were recommended. *Id*. at 7.

- Petitioner attended a physical therapy session at Community Care Physical Therapy on January 15, 2019. Ex. 3 at 10-12. She rated her pain, at its best, as a zero on a ten-point pain scale. *Id*. at 10. At its worst, Petitioner rated her pain as a six on the same pain scale. *Id*. Petitioner was assessed with tendinitis of the left shoulder. *Id*. at 11. She had five physical therapy sessions through January 31, 2019. *Id*. at 10-22.

- Petitioner attended a chiropractic appointment on January 28, 2019. Ex. 6 at 17. The note documenting this appointment indicates that Petitioner felt "like her humerous [sic] is jammed up in the shoulder socket" and that she experienced pain with sudden motion. *Id*. Petitioner described her pain as achy, dull, sharp and stiff and rated it as a seven on a ten-point scale. *Id*.

- Petition underwent a worker's compensation consultation with Dr. Kyle R. Flik on February 6, 2019. Ex. 2 at 9-10. His notes reflect that Petitioner "has been having left arm pain since late October when she had a flu shot. She said it was [an] incredibly painful shot and she had trouble moving her arm for quite some time. She had night pain and difficulty rotating and turning her arm. She has tried physical therapy, chiropractic massage, Kinesio taping, but has had ongoing pain and discomfort." *Id*. at 9. Dr. Flik concluded that Petitioner suffered from "loss of passive range of motion with external rotation to only 45 degrees and 90 degrees of abduction in her contralateral shoulder. Her rotator cuff is weak globally but appears to be intact." *Id*. Petitioner was diagnosed with adhesive capsulitis. *Id*. at 10.

- On February 11, 2019, Petitioner received chiropractic treatment. Ex. 6 at 18. The note reflects that Petitioner had "a lot of pain sleeping" and that she rated this pain as a seven on a ten-point scale. *Id*.

- Petitioner returned for chiropractic treatment on February 13, 2019. Ex. 6 at 19. She reported that despite soreness after her last treatment, she gained some relief. *Id*. Nevertheless, Petitioner also noted that her shoulder "continue[d] to be tight and painful with limited mobility." *Id*.

- During a physical therapy session on February 26, 2019, Petitioner reported using a TENS unit to help alleviate her symptoms and noted that "she is unable to sleep due to pain." Ex. 4 at 92-93. The notes documenting this session further indicate that "[Petitioner] uses [her] right UE [upper extremity] to move the left when needed and uses a wall to rest her left arm on if she needs to do her hair. [Petitioner] reports left forearm aching, left shoulder pain." *Id.* at 92.  Between February 26 and September 18, 2019, Petitioner attended 40 sessions of physical therapy. *Id.* at 6.

- On March 7, 2019, Petitioner informed her chiropractor that she was experiencing left anterior shoulder pain. Ex. 6 at 20.

- Petitioner returned to Dr. Flik on April 9, 2019. Ex. 2 at 11-12. His notes reflect that Petitioner "continu[ed] to work full duties" and "notic[ed] steady and progressive improvement in her shoulder range of motion and level of pain." *Id.* at 11. Dr. Flik also noted that Petitioner continued to have pain at the end ranges of her motion and again assessed Petitioner with adhesive capsulitis. *Id.*

- At a May 3, 2019 chiropractic appointment, Petitioner reported "some improvement in the shoulder." Ex. 6 at 21.

- On September 4, 2019, Petitioner informed Dr. Flik that while her left shoulder continued to improve, she experienced ongoing pain "especially when reaching out overhead, putting on a coat, etc." Ex. 2 at 13. On physical exam, Dr. Flik noted "[Petitioner's] glenohumeral range of motion is improved with external rotation at the side to 70 degrees but adduction is limited still to about 70 degrees. She has significant weakness with supraspinatus testing." *Id.*

- Petitioner underwent a second MRI on September 18, 2019. Ex. 2 at 15-16. The results revealed mild supraspinatus and infraspinatus tendinopathy. *Id.* at 15.

- Petitioner returned to Dr. Flik on September 19, 2019. Ex. 2 at 17-18. The medical record reflects that Petitioner continued to suffer from discomfort and stiffness. *Id.* at 17. Dr. Flik further noted that "it is within a reasonable degree of medical certainty that this flu shot was the inciting or initiating factor that led to her frozen shoulder." *Id.* Moreover, Dr. Flik indicated that Petitioner could continue to work full duty with no restrictions and proceed with performing gentle stretching exercises. *Id.* at 18.

- At an October 8, 2019 chiropractic visit, Petitioner reported clavicle pain as a result

of compensating for her left shoulder. Ex. 6 at 22. Petitioner described her left shoulder pain as achy, dull and stiff. *Id.*

- At a May 18, 2020 chiropractic appointment, Petitioner reported "[t]ightness in the neck and traps, pain near the left clavicle, and limited [range of motion]/tightness in the left shoulder." Ex. 6 at 23.

- Petitioner again saw her chiropractor on August 21, 2020. Ex. 6 at 25. The note documenting this visit indicated that Petitioner continued to suffer from left shoulder pain that was achy, dull and stiff. *Id.*

- In an August 28, 2020 chiropractic noted, Petitioner's left shoulder symptoms were noted to have improved since her last visit. Ex. 6 at 24.

- On November 12, 2020, Petitioner sought treatment at Adirondack Rehabilitation Medicine, reporting persistent left shoulder pain with decreased range of motion. Ex. 20 at 3-4. Although her symptoms had receded over the past six months, she continued to have pain with reaching and at night. *Id.* at 3. The medical note reflects that the "[p]hysical examination [was] reassuring, however, [Petitioner] still has pain and mildly decreased range of motion in the left shoulder." *Id.* at 4.

- In a December 28, 2020 affidavit, Petitioner states that she "had to tie a string to my care door in order to close it with my right hand" and that she had to discontinue driving at night due to an inability to control her car's high beams. Ex. 14 at 2. Petitioner further states that she was unable to perform other activities of daily living without pain such as showering, folding clothes and doing her own hair. Id. at 3.

- Petitioner also maintains that her chiropractor and physical therapist will be a critical part of her life going forward, and that she has suffered "forever injuries that take forever treatments." Ex. 14 at 3.

- Petitioner visited her chiropractor on January 27, 2021. Ex. 19 at 3. The note documenting this visit indicates that Petitioner's *right* arm and shoulder had been sore for a couple of weeks. *Id.* There is no indication that Petitioner complained of left shoulder pain at this time, however.

The case record overall establishes that Petitioner experienced a moderate SIRVA injury that only required conservative treatment. Indeed, Petitioner never underwent surgery, did not receive any cortisone injections, and was able to continue working on a full-time basis. Further, although Petitioner asserts that she continues to suffer from the

residual effects of her injury, the most recent treatment record filed in this case is from November 2020 (over three years ago). Ex. 20 at 3-4. At that time, it was determined that despite Petitioner's report of some pain and mildly decreased range of motion, her symptoms had mostly (albeit not completely) receded. *Id.*

Nevertheless, Petitioner did seek treatment for her shoulder injury only two days post-vaccination, which signals that her initial pain was significant. And even by February 11, 2019 (approximately three months post-vaccination), Petitioner rated her pain as a seven on a ten-point scale. I have also considered Petitioner's extensive participation in physical therapy: Between January and September 2019, Petitioner completed 45 sessions.

Another factor relevant to the magnitude of a pain and suffering award is the effect that a petitioner's shoulder injury had on his or her personal life. In this case, Petitioner has credibly explained that during the height of her injury, her ability to operate a vehicle was impaired, and that she was unable to painlessly perform other activities of daily living. Ex. 14 at 2-3. I give some weight to these contentions while comparing them to the overall record (which corroborate a SIRVA requiring limited treatment).

Despite the demonstrated impact that Petitioner's injury had on her daily routine, I find that the $90,000.00 sum requested by Petitioner to be a bit high. Among the cases cited in her brief are *Black* and *Miller* –where $75,000.00 was awarded for actual pain and suffering. *Black v. Sec'y of Health and Human Servs.*, 20-0777V, 2022 WL 3335594 (Fed. Cl. Spec. Mstr. July 12, 2022); *Miller v. Sec'y of Health & Human Servs.*, No. 20-0604V, 2022 WL 3641716 (Fed. Cl. Spec. Mstr. July 22, 2022). Respondent cited a comparable case - *Niemi v. Sec'y of Human Health & Servs.*, No. 19-1535V, 2022 WL 3135258 (Fed. Cl. Spec. Mstr. July 5, 2022) - in which $75,000 was awarded for actual pain and suffering, although he maintains an award of $70,000.00 is appropriate. Although the facts of these cases present slightly varied courses of treatment, the *Black*, *Miller* and *Niemi* petitioners (like Ms. Cyr) each suffered mild-to-moderate SIRVA injuries and withstood relatively conservative treatment. *Black*, 2022 WL 3335594, at *5; *Miller*, 2022 WL 3641716, at *5; *Niemi*, 2022 WL 3135258, at *6.

Accordingly, balancing the severity and overall course of Petitioner's moderate SIRVA injury against the personal hardships that she experienced as a result, and considering the arguments presented by both parties at the hearing, a review of the relevant caselaw and the written record, I find that $75,000.00 for actual pain and suffering is reasonable in this case.

My award does not, however, include a future component of pain and suffering. As I have previously stated, I reserve that component in SIRVA matters "where a strong

showing is made that the claimant has suffered a permanent disability, or there are other extenuating circumstances that justify inclusion of a future component." *Accetta v. Sec'y of Health & Human Servs.*, No. 17-1731V, 2021 WL 1718202, at *5 (Fed. Cl. Spec. Mstr. Mar. 31, 2021). In this case, Petitioner has not preponderantly established that she has received treatment in more than three years, and the sequelae she might otherwise still experience do not sufficiently rise to the level warranting a future award (but can instead be factored into the actual award I am issuing).

### III. Lost Wages

#### A. Legal Standard

The Vaccine Act provides for recovery of "actual and anticipated loss of earnings determined in accordance with generally recognized actuarial principles and projections," where the injured party's "earning capacity is or has been impaired by reason of such person's vaccine-related injury." Section 15(a)(3)(A). Compensation awarded for a petitioner's anticipated loss of earnings may not be based on speculation. *J.T. v. Sec'y of Health & Hum. Servs.*, No. 12-618V, 2015 WL 5954352, at *7 (Fed. Cl. Sept. 17, 2015) (indicating Section 15(a)(3)(A) "does not envision that 'anticipated loss of earnings' includes speculation" and denying to calculate lost wages on a planned business venture); *Dillenbeck v. Sec'y of Health & Hum. Servs.*, 147 Fed. Cl. 131, 139 (2020) (*citing J.T.*, 2015 WL 5954352, at *7). The United States Court of Federal Claims has "recognize[d] that the determination of compensation for lost earnings 'in accordance with generally recognized actuarial principles and projections' would likely require expert opinion evidence." *Dillenbeck*, 147 Fed. Cl. at 139.

#### B. Lost Wages Determination

Petitioner, a general scale ("GS") employee for the U.S. Government, requests $2,327.13 in past lost wages. She asserts that this amount represents reimbursement for 55.25 hours of sick leave relating to treatment of her shoulder injury. Brief at 10; *See also* Ex. 21 at 24-27. Petitioner reasons that "[i]n order to buy back that time and maintain her benefits," she would be required to pay this amount. *Id*.

I have noted in other cases that it is reasonable to reimburse a claimant for lost paid time off ("PTO"), where a company's policy is to pay employees for days not taken as either vacation or sick leave (and hence the Program reimburses the individual for having to forego this compensation). *See,* e.g., *Gross v. Sec'y of Health & Human Servs.*, No. 19-0835V, 2021 WL 2666685, at *6 (Fed. Cl. Spec. Mstr. March 11, 2021), *mot. for review den'd,* 154 Fed. Cl. 109 (2021). In that context, utilization of a sick day means the petitioner "loses" a paid vacation day – and hence it is reasonable to compensate the claimant for that loss.

Here, however, Petitioner has neither argued nor established that she would have been offered a cash award for unused sick time. Indeed, since government employees are allotted sick leave as a category separate from general/vacation leave, they are not obligated to make up for sick leave expended (except in the uncommon circumstances that the sick leave utilized exceeds what the individual had accrued). Thus, because sick leave is a paid absence from duty, an award for lost wages in this case would result in a double payment. And Petitioner has not otherwise established liability for this expenditure of sick leave. Therefore, based on the above, Petitioner's claim for lost wages is denied.

### IV.     Award for Past Unreimbursable Expenses

Petitioner also requests $2,889.26 in past unreimbursable expenses. Brief at 2. Respondent does not dispute this sum. Opp. at 7. Therefore, Petitioner is awarded this amount without adjustment.

## Conclusion

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $77,889.26**, (representing $75,000.00 for Petitioner's actual pain and suffering, and $2,889.26 for past unreimbursable medical expenses) **in the form of a check payable to Petitioner, Darcy Cyr.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[5]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.